**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT GRZYBEK,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **NO. 08 C 1524** |
| | : | |
| **DIRECTSAT USA, LLC, and** | : | **Electronically Filed** |
| **BRYAN BRAMSON,** | : | |
| | : | **Judge Matthew F. Kennelly** |
| **Defendants.** | : | |

**DEFENDANT DIRECTSAT USA, LLC'S ANSWER WITH
AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant DirectSat USA, LLC ("DirectSat"), by and through its undersigned counsel, hereby respectfully submits the following Answer with Affirmative Defenses to Plaintiff's Complaint and states:

**COUNT I**

Worker's compensation retaliatory discharge – Against DirectSat

1.      Grzybek is a resident of the State of Illinois and lives in Melrose Park, Illinois.

**ANSWER**:      Denied.

2.      DirectSat is a foreign corporation which transacts business in the State of Illinois, County of Cook.   DirectSat provides satellite installation and service support services to DirectTV.

**ANSWER**:      Admitted in part; denied in part.  DirectSat admits that it is a limited liability company that conducts business in the State of Illinois and provides satellite installation and service support services for DirectTV.

3.    Bramson is a resident of the State of Indiana.

**ANSWER**:    Admitted that Defendant Bryan Bramson is a resident of the State of Indiana.

4.    DirectSat hired Grzybek on or about December 3, 2006. At all relevant times, Grzybek was a DirectSat Office Supervisor in its Villa Park, Illinois office. At all relevant times Grzybek's duties as Office Supervisor included routing DirectSat technicians to addresses for purposes of providing installation and service support

**ANSWER**:    Admitted in part; denied in part. DirectSat admits only that it hired Plaintiff on or about December 3, 2006 and that he worked from DirectSat's Villa Park, Illinois office.

5.    Bramson was Grzybek's supervisor at DirectSat and Bramson worked at DirectSat's Villa Park, Illinois office. As a DirectSat supervisor, Bramson had the authority to fire or retain Grzybek as a DirectSat employee.

**ANSWER**:    Admitted in part; denied in part. DirectSat admits only that Defendant Bramson was Plaintiff's supervisor at DirectSat, and Defendant Bramson and Plaintiff worked at DirectSat's Villa Park, Illinois office.

6.    At all relevant times, Grzybek satisfactorily performed his job duties for DirectSat.

**ANSWER**:    Denied.

7.    Prior to working for DirectSat, Grzybek was employed by Apex Digital ("Apex") as an Office Supervisor at Apex' Villa Park, Illinois office. Apex provided satellite installation and service support services to DirectTV.

**ANSWER**:    Denied.

8.    Prior to working for DirectSat, Bramson was employed by Apex as an Office Manager at Apex' Villa Park, Illinois office. Bramson worked at Apex while Grzybek worked at Apex.

**ANSWER**:    Denied.

9.    Bramson was Grzybek's supervisor at Apex.

**ANSWER**:    Denied.

10.    In March 2006, while employed by Apex, Grzybek broke his leg while on duty at Apex and subsequently filed a workers' compensation claim against Apex in connection with that injury. Grzybek exercised his rights under the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.*, by seeking medical care and by filing a workers' compensation claim.

**ANSWER:**    Denied, including as a conclusion of law to which no response is required.

11.    Bramson learned of Grzybek's injury and workers' compensation claim shortly after Grzybek's injury and while Bramson and Grzybek were employed by Apex.

**ANSWER:**    Denied.

12.    On February 14, 2007, Bramson told Grzybek that he was "laid off" from his Office Supervisor position with DirectSat. Grzybek asked Bramson if DirectSat could be assigned to its South Holland, Illinois office. At the time of Grzybek's termination by DirectSat, DirectSat had a vacant Office Supervisor position at its South Holland location. Bramson refused Grzybek's request. At all relevant times, Bramson was acting as an agent of DirectSat and within the scope of his authority.

**ANSWER:**    Admitted in part; denied in part. DirectSat admits only that, on February 14, 2007, Defendant Bramson told Plaintiff that he was "laid off" and that Plaintiff asked if he could be assigned to DirectSat's South Holland office.

13.    After DirectSat terminated Grzybek, DirectSat hired an individual to perform Grzybek's duties at its Villa Park office.

**ANSWER:**    Denied.

14.    On the date of his termination by DirectSat, Grzybek was not medically restricted from performing his job duties as an Office Supervisor.

**ANSWER:**    Denied.

15.    Section 305/4(h) of the Illinois Workers' Compensation Act provides:

It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act, or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise or the rights of remedies granted to him or her by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to

3

threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.

**ANSWER:**    Denied. The Illinois Workers' Compensation Act is a writing that speaks for itself.

16.    Bramson and DirectSat terminated Grzybek on or about February 14, 2007, because he suffered a work-related injury at Apex and exercised protected worker's compensation rights, in violation of the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.*

**ANSWER:**    Denied, including as a conclusion of law to which no response is required.

17.    Bramson's and DirectSat's termination of Grzybek was done with fraud, actual malice, deliberate violence or oppression, and/or willfully, or with such gross negligence as to indicate a wanton disregard of Grzybek's rights.

**ANSWER:**    Denied, including as a conclusion of law to which no response is required.

18.    As a proximate cause of Bramson's and DirectSat's conduct, Grzybek has suffered and will continue to suffer substantial and irreparable injury, loss of income and other monetary benefits, and other compensatory damages.

**ANSWER:**    Denied, including as a conclusion of law to which no response is required.

WHEREFORE, Defendant DirectSat USA, LLC respectfully requests judgment in its favor, and such other and further relief in its favor as the Court deems just and appropriate.

## COUNT II

Intentional Interference With Prospective Economic Advantage – Against All Defendants

19.    Grzybek incorporates by reference ¶¶ 1 through 18 as ¶ 19.

**ANSWER:**    DirectSat incorporates its answers to the above paragraphs as if fully set forth herein.

20.    After DirectSat fired Grzybek, two companies which provided contract services to DirectSat in the State of Illinois made offers of employment to Grzybek, namely, Alaya Communications and Ultimate Wiring Solutions.

**ANSWER:**    Denied.

4

21.    Grzybek had a reasonable expectancy of a valid employment relationship with Alaya Communications and with Ultimate Wiring Solutions.

**ANSWER:**    Denied.

22.    After Alaya Communications and Ultimate Wiring Solutions made offers of employment to Grzybek, Bramson learned of such offers.  Bramson met with Manny Colon of Alaya Communications and Daniel Lapatko of Ultimate Wiring Solutions and told Mr. Colon and Mr. Lapatko that their respective companies should not hire Grzybek because Grzybek would end up suing them for getting hurt on the job just like Grzybek sued Apex for his workers' compensation injury.

**ANSWER:**    Denied.

23.    As a result of Bramson's statements to Mr. Colon and Mr. Lapatko as set forth in paragraph 22, above, Alaya Communications and Ultimate Wiring Solutions withdrew their offers of employment to Grzybek.

**ANSWER:**    Denied.

24.    Bramson and DirectSat intentionally and maliciously interfered with Grzybek's reasonable expectancies of employment with Alaya Communications and/or Ultimate Wiring Solutions, and such intentional and malicious interference prevent Grzybek from obtaining employment with Alaya Communications and/or Ultimate Wiring Solutions.

**ANSWER:**    Denied, including as a conclusion of law to which no response is required.

25.    Bramson was acting within the scope of his employment and on behalf of DirectSat in intentionally and maliciously interfering with Grzybek's prospective employment with Alaya Communications and/or Ultimate Wiring Solutions.

**ANSWER:**    Denied, including as a conclusion of law to which no response is required.

26.    Grzybek has been injured as a proximate result of Bramson's and DirectSat's wrongful conduct.  Among other things, Bramson's and DirectSat's wrongful conduct has resulted in Grzybek's loss of income and other benefits of employment, and emotional distress.

**ANSWER:**    Denied, including as a conclusion of law to which no response is required

WHEREFORE, Defendant DirectSat USA, LLC respectfully requests judgment in its favor, and such other and further relief in its favor as the Court deems just and appropriate

## COUNT III

Violation of Employee Retirement Income Security Act – Against DirectSat

27.     Grzybek incorporates by reference ¶¶ 1 through 26 as ¶ 27.

**ANSWER**:     DirectSat incorporates its answers to the above paragraphs as if fully set forth herein.

28.     At all relevant times, DirectSat had more than twenty (20) employees and was subject to the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq.* ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA").

**ANSWER**:     Denied, including as a conclusion of law to which no response is required.

29.     Grzybek and his minor son participated in DirectSat's health insurance plan with United Healthcare during Grzybek's employment with DirectSat.  The health plan provided to Grzybek from DirectSat was part of an "employee welfare benefit plan" governed by ERISA.

**ANSWER**:     Denied, including as a conclusion of law to which no response is required.

30.     DirectSat's termination of Grzybek constituted a "qualifying event" under ERISA.  However, DirectSat intentionally and maliciously failed to timely notify Grzybek of his rights to continued health coverage pursuant to §1132(c)(1) of ERISA and failed to tell Grzybek that his health insurance coverage was terminated.

**ANSWER**:     Denied, including as a conclusion of law to which no response is required.

31.     Grzybek and his minor son received medical treatments and prescriptions after DirectSat terminated Grzybek's employment.

**ANSWER**:     Denied.

32.     In May 2007, UnitedHealthcare informed Grzybek that his health insurance was terminated.

**ANSWER**:     Denied.

33.     In June 2007, UnitedHealthcare informed Grzybek that medical treatments and prescriptions received by Grzybek and his minor son since February 28, 2007, were not covered by insurance, and that UnitedHealthcare wanted a refund from Grzybek of the claims it "overpaid."

**ANSWER**:     Denied.

34.    DirectSat's failure to provide Grzybek of timely notice of his rights to continued health coverage under COBRA is a violation of 29 U.S.C. §§1132(c) and 1166.

**ANSWER**:    Denied, including as a conclusion of law to which no response is required.

35.    Grzybek was injured and suffered damages as a direct and proximate result of the conduct of DirectSat.

**ANSWER**:    Denied, including as a conclusion of law to which no response is required.

36.    Grzybek suffered severe emotional distress as a result of DirectSat's wrongful conduct, especially because his minor son is almost blind in one ye and requires frequent medical attention and prescription lens changes related to his eye condition.

**ANSWER**:    Denied, including as a conclusion of law to which no response is required.

WHEREFORE, Defendant DirectSat USA, LLC requests judgment in its favor, and such other and further relief in its favor as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

DirectSat incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.  DirectSat reserves the right to amend or support these affirmative defenses throughout discovery and trial in this matter.  The following affirmative defenses are asserted herein and any inadvertent omission of an affirmative defense shall not be deemed an admission and DirectSat does not waive any rights herein.

## FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, because any decisions affecting Plaintiff's employment with DirectSat were made or would have been made in any event for reasons unrelated to his claim for workers' compensation, and for substantial, legitimate, non-retaliatory, non-discriminatory, business reasons.

### SECOND DEFENSE

DirectSat had no knowledge that Plaintiff filed a workers' compensation claim at the time of its decision to discharge Plaintiff, and therefore, DirectSat did not retaliate against Plaintiff in violation of the Illinois Workers' Compensation Act.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, because, in any dealings with Plaintiff, DirectSat acted in good faith and without any malice or intent to injure or harm Plaintiff in any way. Further, DirectSat's alleged conduct neither was, nor is, committed with fraud, actual malice, deliberate violence or oppression, or with such gross negligence as to indicate a wanton disregard for Plaintiff's rights, nor was outrageous, egregious or willful. Therefore, Plaintiff is not entitled to, and his Complaint fails to state a claim for punitive damages.

### FOURTH DEFENSE

Plaintiff's filing of a workers' compensation claim had no causal connection to his discharge from his employment with DirectSat, and DirectSat's decision to terminate Plaintiff violated no clearly mandated public policy, and/or was not pretextual.

### FIFTH DEFENSE

No activity of DirectSat prevented prospective employers of Plaintiff from entering into employment relationships with Plaintiff if they desired to do so, and DirectSat took no actions specifically intended to interfere with a prospective employment relationship between Plaintiff and a specific third party with which DirectSat allegedly interfered.

### SIXTH DEFENSE

No activity of Defendant Bramson prevented prospective employers of Plaintiff from entering into employment relationships with Plaintiff if they desired to do so, and Defendant

Bramson took no actions specifically intended to interfere with a prospective employment relationship between Plaintiff and a specific third party with which Defendant Bramson allegedly interfered.

## SEVENTH DEFENSE

Plaintiff cannot demonstrate that either DirectSat and/or Defendant Bramson took any purposeful action specifically intended to prevent a prospective employer from entering into an employment relationship with Plaintiff and a specific third party.

## EIGHTH DEFENSE

Any alleged comments made by Defendant Bramson that allegedly interfered with a prospective employment relationship between Plaintiff and a specific third party with which Defendant Bramson allegedly interfered were made outside of and beyond the course, scope and authority of Defendant Bramson's employment relationship with DirectSat, were Defendant Bramson's own personal opinion and were made without the knowledge, consent or authority of DirectSat.

## NINTH DEFENSE

Plaintiff was an at-will employee and could be terminated for any reason or no reason, and his employment was terminated based upon reasonable facts and not in retaliation for any actions and/or omissions of Plaintiff.

## TENTH DEFENSE

Plaintiff failed to mitigate his alleged damages.

## ELEVENTH DEFENSE

After receiving notice of the availability of the continuation of his insurance coverage benefits, Plaintiff failed to elect such coverage.

WHEREFORE, Defendant DirectSat USA, LLC denies liability on all claims asserted by Plaintiff and respectfully requests that the Court enter judgment in its favor, dismiss Plaintiff's claims with prejudice and award to DirectSat reasonable attorneys' fees and costs.


OF COUNSEL:

Respectfully submitted,


/s/ Ursula A. Taylor


Jason S. Dubner (ARDC#06257055)
Ursula A. Taylor (ARDC# 6287522)
Butler Rubin Saltarelli & Boyd
70 West Madison Street, Suite 1800
Chicago, IL 60602
(312) 444-9660


Eric J. Bronstein
Colin D. Dougherty
*Pending admission pro hac vice*
Elliott Greenleaf & Siedzikowski, P.C.
Union Meeting Corporate Center
925 Harvest Drive, suite 300
Blue Bell, PA  19422
(215) 977-1000

Counsel for Defendant DirectSat USA, LLC

DATED:  March 21, 2008

## CERTIFICATE OF SERVICE

I, Ursula A. Taylor, Esquire, hereby certify that, on this date, I caused the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

> Margherita M. Albarello, Esquire
> DiMonte & Lizak, LLC
> 218 West Higgins Road
> Park Ridge, IL 60068

I also caused the foregoing to be served by U.S. mail, first class, postage prepaid, upon the following:

> Bryan Bramson
> 3777 Evergreen Street
> Hobart, IN 46342

> /s/ Ursula A. Taylor
> Ursula A. Taylor

DATED: March 21, 2008

W0065181v1